## NANCY BURRITT *vs.* A. H. BURRITT.

As a general rule, as between the father and mother, the obligation to support a child rests primarily upon the father; but this rule is modified more or less by the peculiar circumstances of each case.

In case of a separation or divorce, while the obligation continues to rest as a general rule, and independent of special circumstances, upon the husband, it is materially affected by the facts of each particular case, and may be regulated by the terms of the decree, if there be a judicial separation or divorce.

The award of the care and custody of the child to the mother must be presumed to carry with it the obligation to support, in the absence of evidence to the contrary; or at least to relieve the father from the obligation to furnish such support upon the call of the mother.

At all events he is not so liable without a previous demand and refusal, or an abandonment of the child; which must be regarded as equivalent to a demand and refusal.

The mere omission of the father to support, or the mother's support of the child in the absence and during the non-residence of the father, is not such a refusal to support as obliges the father to refund the expenses incurred by the mother.

To make the father thus liable in a case where a divorce has been decreed, and the care and custody of the child are awarded to the mother, and alimony is given to the wife, there must be special circumstances averred in the complaint, or appearing in the evidence, from which the obligation must arise, or may be reasonably inferred.

APPEAL from a judgment for the defendant, ordered by Mr. Justice GOULD, in a cause tried before him without a jury, at the Rensselaer circuit in October, 1858. The action, as stated in the complaint, was brought to recover of the defendant the sum of $3900 and interest, for the support and maintenance of Julia Burritt, an infant daughter of the defendant, for several years; the allegation being that the defendant had placed the said Julia in the family of the plaintiff; and that the defendant had wholly abandoned her, and neglected to provide for her, and that said Julia had no estate or property of her own. There was no averment that the plaintiff was the mother of the child, or was or had been the wife of the defendant.

The answer alleged that the plaintiff and defendant had

Burritt *v.* Burritt.

formerly intermarried; that the said Julia was their daughter; that in 1842 or 1843, while the parties resided in Illinois, the plaintiff instituted an action in the court of chancery in that state, seeking a divorce from the defendant, the custody of the daughter, and alimony out of the husband's estate; that in 1843 a decree was made in said suit, dissolving the marriage, decreeing a divorce, awarding the care and custody of the infant daughter during her minority to the plaintiff, and directing the payment to the plaintiff by the defendant of the annual sum of $50, as alimony for the term of six successive years. The defendant further alleged the payment of the alimony; the performance by him of all the other provisions of the decree; that he had not lived or cohabited with the plaintiff since the decree; nor had the care, custody, services, society or direction of the said Julia since that time; but that the plaintiff had had the same, claiming the said Julia under said decree, and not permitting her to reside with the defendant. The other allegations of the complaint were denied. On the trial, with the exception of an admission hereafter noticed, no evidence was given of the marriage, of the paternity of the child, of the refusal of the defendant to provide for her, or of any demand on him to do so; but it was proved that the plaintiff was the mother of the child, and had exclusively provided for her, and that the child had no property, and that the defendant had not resided with the plaintiff. Evidence was also given of the value or expense of such board and maintenance during the several years that the plaintiff maintained and supported the infant, showing an expense of several hundred dollars. After this testimony was introduced, the case proceeds to say, " Plaintiff admitted that the decree of divorce was as stated in the answer." The defendant's counsel insisted that there was no evidence of divorce in the case, and protested against the admission, and claimed that as the answer had not been put in evidence, its statements relating to the divorce could not be taken as evidence. The testimony was here closed, and the case submitted. The

Burritt *v.* Burritt.

judge found as facts in the case, the intermarriage of the parties, the birth of their child Julia, the dissolution of the marriage, the then residence of the parties in Illinois, the absence of the defendant from the plaintiff and the child since 1840, the support of the child by the mother since that time, and the residence of the child with her ; that the defendant has not had the control, services or society of the child since that time, but that the plaintiff has had and enjoyed the same, having also for the most part sustained the burthen of her entire support and education, being herself, as was also the child, without property, and having had no assistance in supporting the child, except the sum of two hundred dollars contributed by the grandmother of the child. And he found, as conclusions of law, that the defendant was not liable to the plaintiff for any portion of the support and maintenance thus furnished to Julia Ann Burritt, nor to contribute thereto, even if the pleadings were amended so as to cover the case. The plaintiff excepted, and appealed to the general term.

*M. I. Townsend,* for the plaintiff.

*W. A. Beach* and *Clarence Buel,* for the defendant

*By the Court,* HOGEBOOM, J. It is not necessary to discuss the question whether the evidence in the case justified the finding of the judge on the facts. Neither party has excepted to such finding, or sought to review it ; and we must therefore assume the facts to be as declared by the court below.

It will be observed that the defendant has not been requested, nor has he refused, to furnish the maintenance and support for which compensation is sought in this action ; nor is there any evidence that he has abandoned the child, or refused to furnish her a competent support. It further appears that in point of fact he has not had the possession or the care and custody or control of the child, nor has he had the benefit and enjoyment of her services or society. Under such cir-

cumstances the question arises, in the peculiar relation and attitude of the parties disclosed by the evidence, is he liable in this action?

As a general proposition, and during the continuance of the marital relation, it must be conceded that the husband is liable for the support of the child; but connected with this is the correlative right to the care, custody, control, services and society of his offspring. (2 *Kent's Com.* 206, 207, *and notes. Finch* v. *Finch,* 22 *Conn. Rep.* 411. *Sargent* v. *Denniston,* 5 *Cow.* 106. *Hewit* v. *Prime,* 21 *Wend.* 79.) This right is not absolute and despotic, but is more or less affected by circumstances, and more or less under the control of the courts. When the bonds of matrimony are dissolved, new questions' arise, and new rights attach. As a general proposition the father would still have the right to the care and custody of the children, and probably would be liable for their support and education. In the case of an actual separation of husband and wife, either with or without the sanction of the courts, this right has frequently been judicially declared, (*People* v. ———, 19 *Wendell,* 16; *People* v. *Mercein,* 3 *Hill,* 399;) and upon general principles, I think, it would ordinarily attach as a legal consequence to the dissolution of the marriage contract. It is doubtless in such case subject to the regulation of the courts, the leading inquiry being, what will contribute most to the welfare of the child? (*Cook* v. *Cook,* 1 *Barb. Ch. R.* 644.) The adjudicated cases show that the right of either parent to the custody and control of the offspring is a qualified and not an absolute right, and is to be enjoyed and enforced with primary reference to the well-being of the child. I suppose also the obligation to support the child, as between the father and mother, does not always and exclusively rest upon the male parent. Like the right to the services and society of the child, it is somewhat dependent upon circumstances; and, among these circumstances, the *ability* of the parent to furnish the support is a proper subject of consideration. (2 *Kent's Com.* 192. *Finch* v. *Finch,* 22

*Conn. Rep.* 411.)   As a question between the public and the parents, both are liable.   (1 *R. S.* 614.)   As a question between the child and the parents, I apprehend the courts may compel either, or both, to contribute.   When the question arises between the parents themselves, the primary obligation, in the absence of special circumstances, rests on the father. But this obligation, as a general thing, is connected with, if not dependent upon, the right to control the person, to enjoy the society, and to have the benefit of the services of the child. And this obligation, if not abused to the injury of the child, may in general be exercised in the way most consonant with the views, the convenience or the comfort of the father. Therefore the wife may not in general interfere with the manner in which the husband discharges this obligation.   She may not herself furnish the support without consulting him; she may not designate the place, the time or the manner in which that support shall be furnished.   Hence, even where the husband is bound to furnish the support, there must be an abandonment of the child on the part of the father, or a failure or refusal to furnish the support on demand or request to that effect, or some other substantial omission of duty on the part of the father to the prejudice of the child, before the mother can step in and subject him to an action at her suit.   These are ordinarily conditions precedent to his liability, (*Finch* v. *Finch*, 22 *Conn. Rep.* 411; *Rolf* v. *Abbott*, 25 *Eng. Com. L. R.* 400; *Raymond* v. *Loyl*, 10 *Barb.* 483; *Chilcott* v. *Trimble*, 13 *id.* 502;) and I think they attach as well to cases where the matrimonial relation has been terminated, as to cases where it continues to exist.   Perhaps the reason of the rule is even stronger in the former case, on account of a contrary practice furnishing stronger temptations to abuse. Therefore, in the present case, I find great difficulty in overcoming this objection to the plaintiff's action, that no sufficient evidence appears in the case showing an abandonment of the child by the father, a refusal to supply the necessary support, or a request or demand to that effect.   It is a formal

or technical objection, but a substantial one, essential to guard the parental rights and pecuniary obligations of the father.

There seems to me another difficulty. The bill in the divorce suit must be deemed to have been filed as well to obtain the custody and control of the child, as to dissolve the marriage relation. The decree awards it, and as we must presume, in accordance with a prayer in the bill to that effect. It was a proper prayer—proper in this state—and so, we must presume, in Illinois. It would be proper also in this state (and presumptively in Illinois) to connect with such an allegation or prayer, a prayer that the husband should, after the dissolution of the marriage relation, be compelled to furnish or contribute to the support of the child. (2 *R. S.* 148.) It may be doubted whether the bill having prayed for the custody of the child, an omission to ask that the defendant contribute to its subsequent support, would not be an estoppel upon the plaintiff. Be that as it may, I am inclined to think that the omission to ask in the bill, or to obtain in the decree, a provision requiring the husband to contribute to the support of the child, must *prima facie* be regarded as tantamount to an admission by the plaintiff that no such relief was requisite or called for by the circumstances of the case, and that the plaintiff would willingly encounter the burthen of the support in consideration of the benefit and enjoyment of the services and society of the child. At least I think that should be the presumption, until the mother in a direct proceeding for that purpose, either in continuation of the proceedings in the divorce suit, or founded upon those proceedings, should bring the matter to the notice of the court. I do not say that she should be restricted to the tribunal originally entertaining the proceedings for a divorce, but that she should institute a suit or proceeding setting forth what had been previously done, and the peculiar reasons which entitle her to invoke the aid of the court. The presumption is against her, from her omission to seek this relief originally in a proceeding in which it

was perfectly competent to be granted, and she must remove that presumption by direct and affirmative allegations, as nothing of this kind appears in the pleadings or in the evidence in the present action. I do not think the plaintiff has made a case justifying the interference of this court.

Again: The obligation to furnish support to the child does not arise wholly from the parental relation; for, in such case, it would rest equally on either parent. Nor does it depend wholly upon the pecuniary ability or capacity for labor of the parent; for then it would often rest upon the mother. Nor does it depend entirely upon the fact that the law recognizes the husband and father as the head and supreme power of the family; for then it would always rest upon the male parent. But it is an obligation growing partly out of all these relations and many others; and prominent among them is the right to the care and custody, the society and services of the child. The duty of the father to support the child arises in part from the right to control the person and to command the services of the child. The power to command must involve the obligation to obey. At least I think all these things proper to be considered in connection with, and as entering more or less as, elements of this imperfect obligation which rests upon the father to support the child. When these inducements and benefits are, as in this case, withdrawn, the weight of the obligation is also sensibly diminished. It would seem almost an oppressive exercise of power, first to withdraw the child wholly from the care, control and influence of the father; to deprive him entirely of its presence, society and aid; to put it entirely in the possession and control of the mother with whom he is at variance; to allow that mother to support, educate and maintain it in her own way and agreeably to her own pleasure; and then to require from the husband an absolute and unquestioning compliance with all her demands for the means of its support, education and maintenance. There may be cases where this is proper, but the circumstances must be peculiar, and I think it does not neces-

Burritt *v.* Burritt.

sarily or reasonably follow from the facts which appear before us in the present case.

On the whole, therefore, my conclusions are, 1. That as a general rule the obligation to support the child rests primarily upon the father, but that even this is governed more or less by the peculiar circumstances of each case. 2. That in the case of a separation or divorce, while the obligation continues to rest, as a general rule and independent of special circumstances, upon the husband, it is materially affected by the facts of each particular case, and may be, and usually is, and properly should be, regulated by the terms of the decree, if there be a judicial separation or divorce. 3. That the award of the care and custody of the child to the mother must be presumed to carry with it the obligation to support, in the absence of evidence to the contrary; or at least, to relieve the father from the obligation to furnish such support upon the call of the mother. 4. At all events, that he is not so liable without a previous demand and refusal, or an abandonment of the child, which must be regarded as equivalent to a demand and refusal. 5. That mere omission to support, on the part of the father, or the mother's support of the child in the absence and during the non-residence of the father, is not such a refusal to support as obliges the father to respond for the expenses incurred by the mother. 6. That to make the father thus liable in a case where a divorce has been decreed and the care and custody of the child are awarded to the mother and alimony to the wife, there must be special circumstances averred in the complaint or appearing in the evidence, from which the obligation must arise, or may be reasonably inferred.

The judgment of the court below should be affirmed.

[ALBANY GENERAL TERM, March 7, 1859. *Harris, Gould* and *Hogeboom,* Justices.]